# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KEITH MILLS, | ) |
| Plaintiff, | ) |
| | ) Case No. 6:18-cv-03245-SRB |
| v. | ) |
| BRAD COLE, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. #7). For reasons discussed below, the motion is denied.

**I.     Background**

Plaintiff Keith Mills is a former deputy sheriff of Christian County, Missouri. In 2015, Defendant Brad Cole ("Cole") ran for Christian County Sheriff. Plaintiff, at that time a captain in the Christian County, Missouri, Sheriff's Department, ran against Cole in the election for Christian County Sheriff. Cole was elected on August 4, 2015. On or about August 7, 2015, Cole assumed the duties of sheriff. That same day, Cole terminated Plaintiff's employment. Plaintiff brings this lawsuit against Ray Weter, Hosea Bilyeu, and Ralph Phillips in their official capacities as Commissioners for Christian County, Missouri; against Cole in his individual capacity and official capacity as Christian County Sheriff; and against Christian County itself. (Doc. #1, ¶¶ 2–3). In his action pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his First Amendment rights by dismissing him because he publicly campaigned for the office of Sheriff, which Cole knew. (Doc. #1, ¶¶ 22–35). Plaintiff seeks compensatory damages, punitive damages, reinstatement, "other equitable relief," and attorney's fees. (Doc. #1, ¶ 35).

Defendants bring the present motion under Federal Rule of Civil Procedure 12(b)(6), asserting that this Court should dismiss Plaintiff's complaint because Defendant Cole is entitled to qualified immunity.[1]

## II.  Legal Standards

### A.  Fed. R. Civ. P. 12(b)(6)

A complaint that fails the pleading requirements of Rule 8(a)(2) is subject to dismissal under Rule 12(b)(6).  *See In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059, 1062 (8th Cir. 2017) (en banc).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Defendants seeking a Rule 12(b)(6) dismissal on the basis of qualified immunity "must show that they are entitled to qualified immunity on the face of the complaint."  *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016)).

### B.  Qualified Immunity

Under the doctrine of qualified immunity a government officer sued in his individual capacity is "shielded from liability for civil damages" when performing discretionary functions unless his conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

---

[1] In a footnote, Defendants acknowledge that "[t]he thrust of this motion is that [Defendant] Cole has qualified immunity from suit" but argue that, even if Defendant Cole is not entitled to qualified immunity, Plaintiff's complaint fails to state a claim because it does not satisfy the required "but for" causation standard. (Doc. #6, p. 1 n.1) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).  Plaintiff's complaint states, among other allegations, that "Defendant Cole's termination of Plaintiff's employment was motivated *in whole and/or* in part by Plaintiff's efforts to campaign for Christian County Sheriff."  (Doc. #1, ¶ 29) (emphasis added).  Assuming, without deciding, that Defendants' characterization of *Hartman* is the proper causation standard for Plaintiff's claim, Plaintiff's complaint plausibly alleges that Plaintiff's political affiliation was the "but for" cause of Defendant Cole's adverse employment decision.

*Thompson v. Shock*, 852 F.3d 786, 790 (8th Cir. 2017). Because qualified immunity "is an immunity from suit," the issue "should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial damage claims against government officials are resolved 'prior to discovery.'" *Johnson v. Moody*, 903 F.3d 766, 773 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

When determining whether a government official is entitled to qualified immunity, courts apply a two-step inquiry: "(1) whether the facts alleged demonstrate a violation of the employee's constitutional right and (2) whether that right was clearly established at the time of the employee's firing." *Thompson*, 852 F.3d at 790 (quoting *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 832 (8th Cir. 2015)). Regarding step two of the qualified immunity analysis, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nord v. Walsh Cty.*, 757 F.3d 734, 739 (8th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). To show that a right was clearly established at the time of the challenged conduct, "it is unnecessary to have 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)).

At the dismissal stage of litigation, courts "must consider 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'" *Dadd v. Anoka Cty.*, 827 F.3d 749, 754–55 (8th Cir. 2016) (quoting *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)). "Unless both of these questions are answered affirmatively, an [official] is entitled to qualified immunity." *Nord*, 757 F.3d at 738. District courts have "discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### i. Adverse Employment Decisions and the First Amendment

In general, the government "may not condition public employment on an employee's exercise of his or her First Amendment rights." *Thompson*, 852 F.3d at 791 (quoting *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996)). "With few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016). Recognizing the need "to balance the First Amendment rights of government employees with the need of government employers to operate efficiently," the Supreme Court has developed an exception that may apply in cases where a government employee is dismissed "because of his or her political affiliations or support for certain candidates," commonly referred to as "patronage dismissal[s]." *Thompson*, 852 F.3d at 791 (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *DePriest v. Milligan*, 823 F.3d 1179, 1184 (8th Cir. 2016)). When the adverse employment decision is, as in this case, allegedly due to the employee's "affiliation with the 'wrong' candidate," federal courts apply this *Elrod-Branti* "narrow-justification test." [2] *Thompson*, 852 F.3d at 793 (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69 (1990)).

---

[2] A related exception, the *Pickering-Connick* balancing test, addresses cases involving "a government employee causing workplace disruption by speaking as a citizen on a matter of public concern, followed by government action adversely affecting the employee's job." *Thompson*, 852 F.3d at 791 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)). The parties discuss both tests and argue that *Elrod-Branti*, not *Pickering-Connick*, is the applicable analysis in this case. (Doc. # 13, p. 9; Doc. #18, p. 3). This Court agrees. *See Thompson*, 852 F.3d at 792 ("[I]f an employee is discharged because of his or her expressive conduct, we apply the *Pickering-Connick* test . . . If an employee is discharged because of his or her political affiliation, we apply the *Elrod-Branti* test.").

4

### ii. The *Elrod-Branti* Test

Under *Elrod-Branti*, a patronage dismissal violates the First Amendment "unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare*, 518 U.S. at 714 (citing *Elrod*, 427 U.S. 347; *Branti*, 445 U.S. 507). This test permits government employers to "take adverse employment actions against employees for protected First Amendment activities if they hold confidential or policymaking positions *for which political loyalty is necessary to an effective job performance*." *Shockency v. Ramsey Cty.*, 493 F.3d 941, 950 (8th Cir. 2007) (emphasis added). However, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether *the hiring authority can demonstrate* that party affiliation is an appropriate requirement for the effective performance of the public office involved." *O'Hare*, 518 U.S. at 719 (quoting *Branti*, 445 U.S. at 518) (emphasis added).

The *Elrod-Branti* test "is a functional one, focusing on the actual duties an employee performs" and "require[ing] that a distinction be drawn between political loyalty and other kinds." *Horton v. Taylor*, 767 F.2d 471, 476–77 (8th Cir. 1985). The *Branti* Court itself refused to "accept the proposition that there cannot be 'mutual confidence and trust' between" the employer and employee at issue in that case "unless they are both of the same political party." *Id.* at 477 (quoting *Branti*, 445 U.S. at 520 n.14) (noting that "[t]here is, obviously, a point at which [political loyalty and other types of loyalty] mingle or area merged—a point at which . . . party affiliation bears on [an employee's] job performance"). "*Branti*, however, makes clear that the loyalty required for raw political patronage . . . alone will not justify a patronage dismissal." *Id.* (internal citation and quotations omitted).

5

## III. Discussion

This Court now addresses the question of whether, in light of *Elrod-Branti*, Plaintiff's allegations in his complaint show "a plausible claim for violation" of his First Amendment rights that were "clearly established at the time of the alleged infraction."[3] *See Dadd*, 827 F.3d at 754–55 (quoting *Hager*, 735 F.3d at 1013). Defendants argue that in August 2015, "a reasonable official in [Defendant Cole's] position would believe he could terminate [Plaintiff] for supporting Mills" because under *Elrod-Branti* "a public employer may terminate or demote an employee for supporting an opposing candidate if political affiliation is a reasonable requirement of the employee's position" and "[p]olitical affiliation/association may be a reasonable requirement when the position requires loyalty." (Doc. #6, p. 5–6) (citing *Nord*, 757 F.3d at 744)). According to Defendants, under *Elrod-Branti* political loyalty is an appropriate employment requirement for Missouri deputy sheriffs because "the relationship between a sheriff and his deputies require the sheriff's absolute authority over a deputy's appointment and retention." (Doc. #18, p. 3).

Plaintiff argues that at the time of his termination Missouri statute and Eighth Circuit and Supreme Court case law "clearly established the unconstitutionality of a patronage dismissal—

---

[3] Some circuit courts appear to take differing views about how the two-step qualified immunity analysis fits together with the *Elrod-Branti* or *Pickering-Connick* tests, *compare Jenkins v. Medford*, 119 F.3d 1156, 1165 (4th Cir. 1997) (noting that federal courts have produced "conflicting and confusing opinions" on the issue of patronage dismissals, and holding that because *Elrod-Branti* exception applied, plaintiffs "failed to state a claim"; thus it was unnecessary "to consider whether [the county sheriff was] entitled to qualified immunity), *and Zorzi v. Cty. of Putnam*, 30 F.3d 885, 892 (7th Cir. 1994) (because county sheriff could not show that *Elrod-Branti* exception applied, court began qualified immunity analysis, including further discussion of *Elrod-Branti*), *with Shockency*, 493 F.3d at 951 (because [county sheriff] could not have reasonably relied on *Elrod-Branti* exception and "the law on these issues was clearly established," district court "did not err in concluding that [county sheriff] was not entitled to qualified immunity"), *and Nord*, 757 F.3d at 744 (because government's interests outweighed the deputy sheriff's under *Pickering-Connick*, county sheriff's "actions did not violate a clearly established constitutional right"), which could be due to the Supreme Court's 2009 decision in *Pearson*, 555 U.S. at 236 (holding that courts may skip prong one of the qualified immunity analysis and proceed straight to prong two). *Shockency*, a pre-*Pearson* decision, is the most recent Eighth Circuit opinion applying *Elrod-Branti*. Because *Shockency* is controlling precedent, this Court will follow *Shockency*'s handling of the interplay between qualified immunity and *Elrod-Branti*.

particularly of a deputy protected by state law against such dismissals." (Doc. #13, p. 3). According to Plaintiff, Defendant Cole's conduct was clearly established as unconstitutional under *Elrod-Branti* "because party affiliation is not a requirement for the effective performance of the job of Missouri deputy sheriff." (Doc. #13, p. 9) (noting that Defendants "make no real attempt to establish that party affiliation is a requirement for the effective performance of the duties of Christian County deputies or that a deputy's private political beliefs would somehow interfere with the discharge of his public duties). Plaintiff argues that Defendants have "implicitly conceded" this in their briefings in related cases, because by "trumpet[ing] the alleged 'fact' that he knowingly retained deputies who supported his opponent," Defendants effectively acknowledge that "the lack of such support did not render these deputies incapable of effectively performing their jobs." (Doc. #13, p. 9) (citing *Klossing v. Cole*, No. 17-03064-CV-S-SRB, 2018 WL 5504246 (W.D. Mo. Oct. 29, 2018), Defendants' Suggestions in Support of Motion for Summary Judgment, Doc. #171, p. 36).

Here, because Defendants have not "demonstrate[d] that party affiliation is an appropriate requirement for the effective performance of" Christian County, Missouri, deputy sheriffs, *see O'Hare*, 518 U.S. at 719 (quoting *Branti*, 445 U.S. at 518), Defendant Cole's terminating Plaintiff for political patronage reasons violated Plaintiff's First Amendment rights under law that was clearly established at the time of Cole's conduct. *See Shockency*, 493 F.3d at 951. Defendants' reasoning is not persuasive. First, Defendants mistakenly conflate political affiliation with loyalty in general. *See Horton*, 767 F.2d at 476 ("As to loyalty, *Branti* requires that a distinction be drawn between political loyalty and other kinds."). Defendants have not shown that political loyalty in particular, as opposed to the general loyalty typically expected of an employee towards the employer, has any impact on the job performance of a Christian

7

County, Missouri, deputy sheriff, a position which Plaintiff defines in his complaint as "a POST-certified law enforcement officer." (Doc. #1, ¶ 6). Second, Defendants ignore the rule that, while "[g]overnment officials may indeed terminate at-will relationships unmodified by any legal constraints, without cause[,] . . . it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views. *O'Hare*, 518 U.S. at 725–26 (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The fact that an employment relationship is "at-will" does not itself authorize demotions or firings that would otherwise violate the First Amendment. Third, Defendants conclude—without citation to controlling authority or reference to the particular job duties of a Christian County deputy sheriff—that "[t]he relationship between deputies and the sheriff are nearly identical in North Carolina and Missouri" and that "based on the holding in *Jenkins* [119 F.3d 1156], those facts are sufficient to determine political loyalty is an appropriate requirement." (Doc. #18, p. 4). This conclusion does not sufficiently demonstrate why the particular job duties of a Christian County deputy sheriff mirror those of the North Carolina sheriffs in *Jenkins* or, more importantly, why political loyalty is necessary for a Christian County deputy sheriff's job performance. Finally, while Defendants argue at length about why Mo. Rev. Stat. § 67.145 does not apply to Defendant Cole's conduct,[4] Defendants do not discuss the core issue under *Elrod-Branti* that is their burden to demonstrate: why political loyalty is an appropriate requirement for the effective performance of a deputy sheriff in Christian County, Missouri. Because Defendants have not carried their burden so that the exception is triggered, Plaintiff has alleged a plausible claim that Defendants violated his First Amendment rights as clearly established under *Elrod-Branti*.

---

[4] As of August 2015, this Missouri statute stated that "No political subdivision of this state shall prohibit any first responder . . . from engaging in any political activity while off duty and not in uniform . . . ," where "first responder" was defined as "any person trained and authorized by law to render emergency medical assistance or treatment" such as "deputy sheriffs." Mo. Rev. Stat. §§ 67.145, 192.800 (2013).

8

Defendants' reliance on *Nord* does not change the outcome. The *Nord* court applied the *Pickering-Connick* balancing test and ruled that a county sheriff in North Dakota was entitled to qualified immunity from a deputy sheriff's First Amendment retaliation claim. 757 F.3d at 743. The plaintiff in that case ran against the incumbent sheriff, lost the election, and was fired by the re-elected sheriff the next day. *Id.* at 737–38. Here, *Nord* does not control because that court applied only the *Pickering-Connick* test, 757 F.3d at 740, 744, which—as the parties agree— does not apply in this case. Moreover, the *Nord* court's discussion of the Fourth Circuit's *Jenkins* case, which Defendants' argue this Court should follow, does not change the analysis because that decision is not binding on this Court and is based on law of states other than Missouri. *See Shockency*, 493 F.3d at 950–51.

*Shockency*, on which Plaintiff relies, is more on point here because the court in that case applied *Elrod-Branti* to reach its decision. In *Shockency*, the court found that political loyalty was not an appropriate requirement for the effective performance of Minnesota deputy sheriffs. 493 F.3d at 951. Defendants seek to distinguish *Shockency* from the present case, arguing that "[f]or the same reason *Shockency* did not rely on *Jenkins*, so too should this Court not rely on *Shockency*—because the differences in Minnesota law and Missouri law are too significant to ignore." (Doc. #6, p. 12). But the distinctions Defendants identify between the Minnesota deputy sheriffs in *Shockency* and Missouri deputy sheriffs do not change the outcome in this case. None of the distinctions pointed to by Defendants have to do with the "actual duties" a Missouri deputy sheriff performs compared to the duties of a Minnesota deputy sheriff. *See Horton*, 767 F.2d at 477. For instance, according to Defendants one "critical" distinction is that in *Shockency* the plaintiffs were "'classified' employees who could only be terminated for cause," whereas "Missouri deputies are like the deputies in *Jenkins* . . . meaning they are at-will

employees serving at the pleasure of the sheriff and subject to patronage dismissal." (Doc. #18, p. 6) (citing Mo. Rev. Stat. § 57.275.2).[5]  As stated before, however, it was clearly established at the time of the alleged misconduct that at-will employment status alone does not authorize the employer to demote or fire employees in violation of their constitutional rights.  *See O'Hare*, 518 U.S. at 725–26.  The *Elrod-Branti* exception does not hinge on whether the employer can show that the employment relationship was "at-will."  Instead, the core question is whether the employer can show that political affiliation "is an appropriate requirement for the effective performance of the public office involved."  *O'Hare*, 518 U.S. at 719 (quoting *Branti*, 445 U.S. at 518).  Defendants have not made such a showing.[6]

In sum, it is beyond debate—and thus clearly established—that patronage dismissals violate the First Amendment, *Elrod*, 427 U.S. at 373, unless "party affiliation is necessary to do [the job at issue] effectively."  *Shockency*, 493 F.3d at 950; *Horton*, 767 F.2d at 472.  Here, Defendants have not demonstrated that "political loyalty is necessary to an effective job performance" of a deputy sheriff in Christian County, Missouri.  *See Shockency*, 493 F.3d at 950.  As a result, Plaintiff's complaint states a plausible claim that Defendants violated his First Amendment rights under law that was clearly established at the time of Defendant Cole's conduct.  Defendants therefore cannot show that Defendant Cole is entitled to qualified immunity on the face of Plaintiff's complaint.  Moreover, because the Court denies Defendants' motion to dismiss, the Court does not need to and will not address whether a grant of qualified

---

[5] Mo. Rev. Stat. § 57.275 expressly states that deputies serve at the pleasure of the sheriff, but does not state that deputies are "subject to patronage dismissal."  *See id.*
[6] Defendants point out that "Plaintiff also argues Defendants have not discussed Plaintiff's specific job duties" and respond by asserting that "Plaintiff's pleading is devoid of any specific facts about his job duties other than that he was a POST certified law enforcement officer." (Doc. #18, p. 4).  Under *Elrod-Branti*, however, it is Defendants' burden, not Plaintiff's, to "demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  *Branti*, 445 U.S. at 518.

immunity would have resulted in Plaintiff not having a plausible claim against Defendant Christian County.

### IV. Conclusion

Accordingly, Defendants' Motion to Dismiss (Doc. #7) is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2018